May it please the Court. My name is Stuart Goober. I'm from the law firm of Ferrucchi & Ferrucchi. I represent the plaintiff appellants. I'm going to leave myself three to five minutes at the back end, depending upon how much the front end takes. This appeal involves a dismissal of a complaint under Rule 12b-6. The case is a consumer class action alleging claims under California and New York's consumer protection statutes and various warranty claims. The gravamen of our complaint is that the phrase, Starbucks double shot espresso, displayed prominently on the can of the product, leads consumers to believe that the product contains two shots of espresso when, in fact, it does not. Based on the difference in caffeine levels between the handmade Starbucks you get in the store, the Starbucks store, versus the express versus the canned product at issue. Now, to support our allegations, we commissioned a national consumer survey, which demonstrated, based on the name and label of the product, that people believe it contains two shots. Now, that survey wasn't close. Almost 90% of those surveyed answered in the affirmative. But the district court said that the survey was not going to be reviewed because there was nothing there that could show that it had any oompa, if you will. Nothing showed it had anything but just allegations of what it had to do. Let me read you the allegation that we have in the complaint about this consumer survey. It's paragraph 33 of our complaint. A recent national survey conducted among a demographically representative U.S. sample of over 400 consumers of the product demonstrated that based on the name and complete label of the product, over 89% of those consumers believed that the product contains two shots of Starbucks brand espresso. Go ahead. I said the survey was conducted by an independent market research company. So you're alleging plausibility in that paragraph. That's the purpose of the paragraph, to show the plausibility of your comments before. When you say probability, what do you mean? Plausibility. He's talking about Twombly. Plausibility. Oh, okay. Right. That's the purpose of that paragraph, to show plausibility. How much more do you have to show in order to show plausibility? The district judge says the survey was worthless because you didn't give all the details of how you conducted the survey and how you selected the sample group and what was the margin of error and so on, all the things you need to do on a survey. How much of that stuff do you need to do in response to a 12B6 motion attacking the class? Okay. That's one of the key issues in this case. Well, that's my job of raising key issues. Exactly. I'm very happy that you spotted the wisdom in that question. Candidly, I don't know what the answer to that question is. We pled it this way. When we were challenged at the district court level, we readily said give us leave to amend and we'll give you all the information you want. That's not an issue. We have the information. We're willing to impart it. If you win here, do you need to amend? What? If you win here, do you need to amend or is your existing complaint sufficient? If I win here, I do not need leave to amend because we'll go into discovery and then we'll get into the real facts of the case. Part of our appeal is the lower. It might be that you would lose on the fact that you'd adequately pled, but you'd be allowed to amend. That would be okay, too. Okay. But what you're suggesting is that is more than adequate. What you've said, more than adequate to show plausibility. At this juncture, yes. Otherwise, I'm putting in basically expert testimony. I'm going to get to a point in this case on this survey where I'm going to bring an expert in and they're going to question that expert. And I'm going to have to jump through every oop. I listen to your argument, but what's your legal basis for the idea that the allegations you have set out here are more than sufficient to meet the 12B6 standard? Oh, we believe that on a complaint everything is accepted as true, but not only that. We provided a basis for the truth. What we don't have to do and why I do not think we need to go any further, because to put all those other things in, now we're pleading evidence. Is that what I have to do here is plead evidence to meet the plausibility standard? I don't believe so. I believe we've met that standard, and if we haven't, we can meet it anyway on an amendment. Now, in addition to that, we did lab testing. The product on average contains less caffeine than the double shot sold in the stores. The difference is 1.3 milligrams versus 1.20 milligrams. When I first looked at those numbers, I said to myself, they don't seem like that's much of a difference. And so we went out and got a statistician, a professional, to analyze the data that we got. And he came back and said that that difference is statistically significant. I then put my math cap on and determined that the difference was about 12%, okay, and said to myself, well, if they took 12% of my income away from me, I would consider that material. So I believe there's a real difference here. The assumption on which your allegations here is based is that, I gather, because you can't take the can and compare it to two shots of espresso and measure like how much is in one or the other, you're using the caffeine quantity as a proxy. We use caffeine as the surrogate, without question, because I can tell you from my own point of view, if I walk into a Starbucks or any coffee shop and I want that extra hit of caffeine, I'm having the espresso. To me, espresso means a higher caffeine concentrate. I'm getting a different one in the store than I do in the marketplace when I buy the can. And there's no reason that I should believe that I should be getting any difference, especially when it's called Starbucks, double shot, espresso, and I'm not getting a double shot. What's it called in a store? Starbucks, double shot, espresso. I come to the counter, not buying a can. If I come to a Starbucks and I want a double shot of ‑‑ Dopio. They use a different language term. They call it Dopio. It's Italian, right? Yeah, they use the Italian term. It means the same thing. Well, I don't know what it means. It means Dopio. No, it means espresso in Italian. Dopio means espresso, and espresso, what's a double shot then? Just two measures of coffee. Okay, double shot is no different than if I walked into a bar, okay, and I sat down and I said, I'd like a shot, and my buddy said, you know what? Put a shot on me. Let's make it a double. That term, double shot? You get two glasses then. You don't get two glasses. Yes, you do. You get two glasses. I guess you have to. Because the shot glass depends on the bar, but the shot glass, we'll match drinking capabilities, but the shot glass has a measure in it, and if you put in two, you'll be over the top. Right. Maybe that's what you want to do, be over the top. So you're balancing the court on three levels. The court disregarded our consumer survey results. I've heard what you have to say about the consumer survey, but when you're talking about your caffeine, that it doesn't contain the two shots of the brand espresso, your opponents suggest, no, the caffeine content is not fixed. It's not a precise indicator of the quantity of the espresso of any given product, and they suggest that's the whole of the issue, and the district court bought that. Right, and the district court is incorrect. Why? Well, because you can use an average if you want. There's nothing wrong with using an average to get to those figures at all. The district court basically said our Starbucks double shot espresso. What do you mean by an average? I'm sorry? What's an average? What do you mean by an average? Okay, when we did the testing, and I talked about the 1.36 milligrams versus the 1.20 milligrams, that is averages. Now, there is no question we use the caffeine level as a surrogate. No question about it. But the consumer that walks into the market and buys the can and says, thinks they're getting a double shot of espresso, and they walk into Starbucks and they get a double shot of Dopio, they're going to think it's the same thing. At 89 percent of my consumers said so. If you buy the can and you've also been a Starbucks customer, under your theory, you should know immediately on opening the can that you've been given too weak a dosage. I don't know whether you would know that or not. Well, if you didn't know it, what difference would it make? It makes a lot of difference. Your point is right. Your point is right. Your point is right. If I buy a car, okay, and that car has 456 horsepowers in it, and I buy another car and it has 385 horsepowers in it, I doubt unless you're a real car person you're going to be able to tell the difference between 385 horsepower and 450 horsepower. It's a bad analogy. Me, I can tell the difference. It's a bad analogy because you can't always measure strength of a movement by your horsepower. And this is the point that your defendant makes here, that there's no real deception, because someone who buys a can, if he feels it's too weak, won't buy the can anymore. If he feels it's too weak, it's because he has in mind the measure he had when he went into a Starbucks. But there's no evidence that there's not an allegation that people bought the can once, thought it was too weak, and so they didn't buy another can. No. The allocation that we have is that over 89 percent of consumers polled believe they were getting a double shot of Espresso. Goober, this is really an issue of class certification, isn't it, rather than a 12B6 motion? Class certification? You're going to certify a class eventually, right? Yeah, we're not at that. I need my complaints sustained first, and then I'll worry about a class. Is it one of your points that what this district judge did was accelerated the issue of class certification? I think she looked at this like the court below looked at this like a motion for summary judgment and acted as the fact finder. And we were basically put at that standard. Now, I have 219 left, so I better get out of here. So I leave myself a couple minutes. Let's hear from your opponent. You'll have time for rebuttal. Morning, Your Honors. May it please the Court, Kevin asked for on behalf of the appellees, whom I'll collectively refer to as Starbucks for the sake of convenience. Starbucks, as the Court knows, is a coffee company. It is not a pharmaceutical company. It does not sell caffeine. It sells coffee. The plaintiff has not sued on the basis of any representation about caffeine because there are no such representations made on the product. The product is a coffee product. Coffee, of course, contains caffeine. It's a natural beverage. It happens to contain it. I think you're missing the point of the caffeine-related allegations, actually. It's being used as a proxy for quantity of liquid. Understood, and that is evident. So we're not at the point of trying to figure out whether it would be material to a consumer who buys your product, whether it has 136 versus 120 milligrams of caffeine. They're just using that as a stand-in for the quantity of the liquid that's in the can, and it seems to me that's perfectly reasonable here. Why would that not? If you're actually using the same beans that you use to make espresso in your stores, and you are, in fact, making espresso as opposed to some other coffee beverage, even if you're doing it on a mass basis versus an individual, you know, one shot at a time basis, why would I assume that the caffeine level is going to be, I guess, what, 12 percent different? Your Honor, caffeine is dependent on a number of factors, even across different types of espresso, including such things as the method of production, the equipment used, the technique used. The plaintiffs admit that in their complaint. The plaintiffs admit that different brewing techniques and equipment can affect the levels of caffeine, and these products are obviously brewed by different methods using different equipment. One is prepared before the consumer's eyes by hand using single-serve equipment. There's no question about that. It's not obvious to me that if you are making espresso, again, not because that has a very specific meaning in terms of the method of making the coffee. It's not just like a drip coffee, right? It's using pressure to have the water or steam go through very fine grounds. Correct. If you're using that technique and you're using, in fact, the exact same beans, I'm not sure why producing it on a mass basis versus a shot-by-shot basis would result in a variation in the caffeine level of the liquid that comes out of the machine. It seems to me that's not an obvious fact that I can just take judicial notice of. I would need some proof, and maybe if you get to summary judgment, you'll be able to establish that, in fact, the caffeine, the varying caffeine levels, it's not a good proxy. But at the 12B6 stage, how would I have any basis to make an assumption about that? Your Honor, the plaintiff admits that in the complaint. The plaintiff actually admits in the complaint that the techniques can differ, and I think that it should be obvious if you look at a canned beverage that's produced in a factory. I don't think it's a stretch to infer that there is not an assembly line of baristas sitting there with aprons, pulling shots by hand. I just told you what my assumption is. My assumption is obviously that you're not, you don't have the individual cans and you're pouring individual shots in there. You're making espresso on a mass basis in order to produce a canned beverage. I'm granting you that. What I'm saying is that if the implied representation on the product label is true, what you are telling consumers is that they are, in fact, getting two shots of espresso made from the same beans that you sell in the store, made through a method that actually produces a liquid that you can fairly call espresso. So it's being done on a mass basis as opposed to pulling shot by shot. I'm saying that I don't have any basis for knowing that the difference between the mass production basis and the shot by shot basis is going to have a variation in the level of caffeine in the liquid that comes out of the machine. They have not admitted that that's true. And I don't know that to be true as a factual matter. So how can I sustain the district court's ruling here? Well, Your Honor, first of all, there's the threshold issue of the representation itself. And embedded in that question is what exactly is a shot? Let's put that aside because I know that's your threshold argument that I think you lose on. So just take on, assume that I'm not with you on that first part. Okay. They're using it as a proxy for the quantity of the liquid that's contained in the can. And I just explained to you why I don't think as a factual matter I know why the caffeine level would differ based on whether it's an individual shot production versus a mass production. So what's your answer to that? Your Honor, first of all, you have to look at the plausibility of all of the facts. If you have a six-and-a-half-ounce beverage, the first ingredient of which is espresso, I think on that basis alone the notion that there is less than one-and-a-half ounces of espresso is automatically suspect. The second thing I would say is that, again, to the constitution of the canned product, it's shelf-stable. It's not a fresh product. That, again, is an indicator to the consumer that it's a fundamentally different type of beverage. Third of all, I don't think that the law requires that the products be of identical consistency or even quality, to use the term that the plaintiffs have adopted here. I think California law is clear. The Rubenstein case in particular talks about that. You can have a Gap sweater in one store and another Gap sweater in another store. They've got the same brand. They don't need to be identical, and it is not false advertising to fail to explain the intricate differences between the two products. That is for the brand to decide. How they want to put products on the market, it's a dynamic marketplace. If they choose to use a different grade or quality or strength in one context versus another context, that is the manufacturer's prerogative to do that as a matter of law. Are these defenses that you would put up rather than an issue right now on the sufficiency of the complaint? I don't believe so, Your Honor, because what I just described is a matter of law. Rubenstein was decided on the pleadings, on a demur, the State court equivalent of a motion to dismiss. And that court affirmed the superior court's sustaining of the demur on the basis of a purely legal issue, which is that a manufacturer doesn't have to offer uniformity, even when it's selling the same product. It's not the question. The question is what's the meaning of double shot? That is a great question. Clearly, the manufacturer could do anything he wanted with a can. But if it says double shot and a survey is brought to bear saying that that means that's two shots like you get in a Starbucks in a corner, then there's enough allege it's plausible that there's a deception here. That's all the plaintiffs are saying. You could win on your defenses. You could defeat the class because of lack of typicality or adequacy or any other ground. But on a 12b-6 motion, isn't the plaintiff entitled to the import of his allegations? Your Honor, to be fair, the allegations that the plaintiffs offered around their survey, even taking it at face value, do not say that consumers believe they are getting the same exact beverage that they're getting. What's the survey for, then? The survey says do the consumers think there are two shots of espresso in the can? It does not say do the consumers believe that you are getting the same drink that you're getting when you order Adopio in the Starbucks cafe. Those are two very different questions. And this, by the way, is part of the reason we took issue with not putting the question in the complaint. But even if you take the allegation at face value in the complaint. I think you're raising a pleading bar too high. Well, I'm reading the allegation on its face. It says a national survey conducted among demographically representative U.S. sample of over 400 consumers of the product demonstrated that based on the name and the full label of the product, over 89% of those consumers believed that the product contains two shots of Starbucks brand espresso, period. It doesn't say believe we're getting the exact same drink that we would get if we ordered it in a Starbucks cafe. It simply says we believe we're getting two shots. Those would be excellent questions to ask the expert. But for the purpose of the pleading, it seems to me it's sufficient. Your Honor, respectfully, they don't even allege it's the same, that consumers believe it's the same as what's in the cafe. It simply alleges that they believe there are two shots. They're not even – I think you're misreading the allegation there. It says Starbucks brand espresso, and combined with – what is it, paragraphs? I don't know. Tell me it was 25, 26 or something. They said at least until very recently you all sold the – you only had one roast of espresso beans that you sold worldwide. So what I read the Consumer Survey to say is not even that, as in Rubenstein, you were just representing that, oh, well, we're just putting some generic espresso. It could be from Folgers, for all we know. We're just dumping that in there. It's Starbucks brand espresso, meaning the same espresso you would get if you went into a Starbucks and said, can I have a double shot of espresso, please? So if that – again, if that's true, and that's why I said I just disagree with you on that first part, they then say, okay, well, a consumer thinks that you're dumping the equivalent of two shots of your brand of espresso in this can. And so why would the caffeine level be off by 12 percent if, in fact, that's what you're doing? Again, there may be an explanation that you'll be able to prove out with evidence, but at the 12B6 age, I don't know what the answer to that is. Your Honor, respectfully, roast is only one factor amongst many that can affect the level of caffeine in a product. Other factors, which the plaintiff admit, have to do with brewing technique and equipment and so on. So simply alleging that it's the same roast of beans used in various different contexts, that doesn't resolve the question. And a modest differential in caffeine is easily explainable by reference to the methods of production that are obviously different between these. Maybe you know that. I appreciate the fact that you're more familiar with your company's products than I am. But I don't know that as a factual matter. That just strikes me as something that will need to be fought over at summary judgment. And maybe you get out at summary judgment. But all they need to do is inch their complaint past the level of plausibility. And it strikes me as at least that laboratory test that they've done, it makes it plausible that maybe there's not the equivalent of two shots of espresso. Maybe there is. But all they need to do is inch it past the level of plausibility. They're not trying to prove up the whole case at the complaint stage. If I could, counsel, it seems to me that we have two explanations here. One is that the product does not contain two shots. That's the one explanation. That's from your opponent. The other explanation is the caffeine content is not fixed or precise indicator of the quantity of the espresso in the product. That's your side. But if I have both of those, it seems to me 12B6 is not the appropriate place for us to be throwing this case out. Because if there are two alternative explanations, one advanced by you and one by the other side, both of which are plausible, then at that point, a 12B6 motion should not be granted. That's what we said in Starr. And so I'm trying to, I mean, I hear you arguing with Judge Watford, who knows a lot more about his coffee than I do. But I'm just saying to you, I'm looking at this on the explanations offered. And I'm saying if I follow Starr, I'm trying to figure out why 12B6 is the right place. It seems to me summary judgment might be the right place. But if I look at Williams v. Gerber, it says a reasonable consumer question, which is whether the reasonable consumer likely to be deceived or misled, which is what's got to be proven, is a jury question. And so, therefore, I'm saying to myself on a 12B6 motion, when I have to give every benefit of the doubt to the one who's alleging it, how do I get there? Well, Your Honor, the question that we've been spending the bulk of the time here talking about has been whether the plaintiff has adequately alleged falsity. Well, I understand, but they got the survey. Right. Which is suggesting. So if you want to say that the survey has to say more than the survey says, well, okay. I'm not sure that's a 12B6 motion either. I'm more like what that old DJ over there from New York who's saying that isn't what that's about, 12B6. That's a summary judgment. But I got that survey. Then I can get past that. Then I go to the attacking the allegations about the caffeine, and here's where I've got these two different plausibilities. And I'm just saying this doesn't seem, based on Starr, the right place to say, by dang, I can discern that. And certainly not, as the district court has suggested, because of their judicial knowledge about this. Well, Your Honor, I don't think it requires judicial knowledge. Well, that's what she said. Well, even if the Court indicated as much, the fact is the differences in caffeine concentration attributable to brewing technique and methodology, that's something the plaintiff admitted. In the first iteration of the complaint, that was based upon the website. The plaintiff tried to use the Starbucks website to demonstrate the differentials in caffeine, and we pointed out to the Court that website states on the very same page, caffeine levels can vary greatly depending on such things as brewing technique and methodology. They backed away from that. In the second amended complaint, however, the plaintiffs, from their own lips, admitted such factors can affect caffeine concentration. So whether the Court indicated some reliance upon judicially noticeable fact or not, the Court can sustain on any basis in the record. It is in the record that the plaintiff admitted that, that variability question of caffeine. And when you couple that with, A, the very modest difference between the caffeine in the canned product versus the freshly brewed dopio, and, B, the volume of liquid in the can, you have to look at all of the facts together to determine plausibility. And the notion that there is not at least 1 1⁄2 ounces of espresso in a 6 1⁄2 ounce beverage, the first ingredient of which is espresso, I don't think that's plausible, and I think using caffeine as a surrogate for the volume of espresso is inherently faulty for all the reasons I've explained. I see I have four seconds left. Thank you, Counsel. Do you have some concluding comment you want to offer? I would ask the Court to affirm. It seemed like a good place. You wrapped up in a nice place, and that's why I was cutting you off there. Okay, very good. Do you have a little bit of time for rebuttal? One, on this difference on how it's made and this, that, and the other thing, the brewing, this and that, this does not give Starbucks carte blanche to turn around and make a product, call it double shot and have 0.20 milligrams of caffeine in it. But based on Counsel's representation, Starbucks could do that based on the brewing. It doesn't change the falsity of the statement. Also, we don't claim that they're not two different drinks. They are two different drinks, but they have a common element, which we claim. What is that common element? Two shots of Starbucks espresso. So it may be a little different drink. It doesn't change the falsity of the statement. Last, brought up the Rubenstein case. The Rubenstein case is a much different case. It involved the Gap Factory stores. Gap Factory stores is much different than you walk into a Gap store. If I walked into a Gap store and a Gap Factory store, I would know there's a difference. They're discounted and they have a special name, Gap Factory stores. And what we're talking about is a difference in quality in Gap across its brand line, okay? This is one individual product, not a full line of Gap clothing. So I think there's a big difference between those two cases. I will say, Judge Wilford, you do have more knowledge about coffee and caffeine than I do, for sure. I doubt that. I have my great 30 seconds left. I'll say thank you to the panel. It is always a pleasure, especially Judge Hellerstein from the Southern District of New York, which I've appeared before many, many times. I thank you very much. Great. Thank you, counsel. Case just argued as submitted.
judges: N.R. Smith, Watford, Hellerstein